Penny Averitt **PEEPLES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–89–274 CR.

Court of Appeals of Texas,
Beaumont.

Oct. 31, 1990.

Willis Everett Smith, Kingwood, Robert Kalish, The Woodlands, for appellant.

Peter Speers, III, Dist. Atty., Kathleen Hamilton, Asst. Dist. Atty., Conroe, for state.

## OPINION

BROOKSHIRE, Justice.

The Appellant was indicted in October, 1981, for the sexual abuse of a child, being then Section 21.10 of the Texas Penal Code, a second degree felony, and also for the offense of indecency with a child, which was and is Section 21.11 of the Texas Penal Code, a third degree felony. The section on sexual abuse of a child is superseded by TEX.PENAL CODE ANN. § 22.021, aggravated sexual assault.

The Appellant was convicted and sentenced by a jury to 30 years confinement in the then Texas Department of Corrections.

Since conviction and sentencing the Appellant has filed a number of applications for habeas corpus writs. These habeas corpus petitions were filed pursuant to Article 11.07 of the Texas Code of Criminal Procedure in an attempt to appeal his conviction. The basic thrusts of these writs were to set forth that Appellant had received ineffective assistance of trial counsel. Peeples had alleged that his then trial attorney had failed to appear in court on a number of occasions or at least on more than one occasion. In addition, the attorney had failed to file a motion for speedy trial and, importantly, the trial attorney had failed to give a notice of appeal as was requested by the Appellant. On one occasion the trial court had fined the trial counsel $250 and also sentenced the trial lawyer to some ten days in jail for failing to show up for a court appearance. Later, however, this order was rescinded.

Even later, however, the district clerk's file revealed that an Agreed Judgment of Suspension was obtained by the State Bar of Texas Grievance Committee against the attorney. The attorney's law practice was suspended for thirty days. A partial basis for this action was due to certain alleged misrepresentations to his clients among whom was the Appellant herein. One of the important elements involving the grievance procedure was that his attorney had misrepresented to Peeples that an appeal had been instituted when no appeal had been filed. In February of 1983 the Appellant filed a motion to compel the court reporter to transcribe the trial notes and evidence and also complete a statement of facts. The Appellant on the identical day filed an application to proceed without the prepayment of the costs or fees in order to obtain the reporter's transcribed notes and a statement of facts.

Considerably later, on October 25, 1989, a pro se notice of appeal along with an attached copy of an opinion, being a per curiam opinion by the Texas Court of Criminal Appeals, was filed. The Court of Criminal Appeals had ordered that the Appellant be awarded an out-of-time appeal, holding that this would be the proper remedy. Hence, Appellant could effectively and legally give his out-of-time notice of appeal. The trial court appointed another duly licensed attorney. This was done without a hearing; however, that attorney was grant-

ed a motion to withdraw on December 6, 1989. Then on that date, the court appointed the present attorney of record, the Honorable Willis Everett Smith, as the attorney for Appellant.

At about the end of the first week of December in 1989, Sue Rains, the official court reporter for the 221st District Court of Montgomery County, filed a sworn reporter's affidavit setting out and verifying that she simply does not have the shorthand notes that were taken at the Appellant's trial. Apparently, a thorough investigation was conducted by this same court reporter. A review of the court's records were made. Further, there were several interviews with prosecutors. Appellant states that he is thoroughly convinced that there is no other record or reproduction of the trial notes or other transcriptions existing. *Thus, no statement of facts can be produced.*

The Appellant brings forward but one ground of error which is that the Appellant was deprived of a statement of facts on his out-of-time appeal without any fault on his part after exercising all due diligence required by law. The state concedes that the Appellant had attempted to file an application for a writ of habeas corpus on February 18, 1983, in an attempt to appeal his conviction and that the Appellant had asserted that he had been denied his constitutional right to an effective assistance of counsel as guaranteed to him by the Sixth and the Fourteenth Amendments of the United States Constitution. Appellant avers specifically that his then trial counsel, John Ogletree, had failed to file a notice of appeal. There was a hearing on the application before the trial judge. Findings of facts were forwarded by the trial court to the Court of Criminal Appeals, which denied the application for habeas corpus on behalf of the Appellant herein on or about April 25, 1984.

Under the totality of the situation we feel constrained to grant the Appellant's only ground of error. We have struggled assiduously in the past with the problems presented by the lack of a trial record. *See Martin v. State,* 744 S.W.2d 658 (Tex.App.

—Beaumont 1988, *no pet.*). This case dealt with the sequelae of a new trial. There had been ordered in *Martin* a complete record by the United States Court of Appeals for the Fifth Circuit sitting at New Orleans, Louisiana.

We think there is a reasonable showing (without criticism towards anyone) that this official court reporter should have had her trial notes as of the time that the Appellant requested and filed a motion to compel the transcription of the notes into a formal statement of facts. No statement of facts was forthcoming. Under well-established Fifth Circuit decisional law we yield to the ruling that the Appellant is entitled to a new trial. We, with faithfulness, follow the Fifth Circuit's rule; we think that the Appellant was denied a statement of facts through no fault of his own. We also follow and are faithful and loyal to the decisions and philosophies on this matter as spelled out by the Court of Criminal Appeals of Texas. *See Timmons v. State,* 586 S.W.2d 509 (Tex.Crim.App.1979); *Pierson v. State,* 147 Tex.Cr. 15, 177 S.W.2d 975 (1944).

In the *Martin v. State, supra,* case, it was abundantly clear (this writer certainly thought) that the *trial attorney and the accused made a conscious, intelligent, knowing decision not to appeal.* The pertinent, relevant, paramount part of that record clearly demonstrated, this writer sincerely thought, that the accused obtained a life sentence and that his then attorney of record and he, himself, had made the highly intelligent decision not to appeal. This decision was soundly rational because a remand could have come about; and at that time, upon a retrial, *the accused could have received the death penalty.* In *Martin, supra,* the defendant elected *not to face the death penalty.*

With the possibility of the death penalty staring Martin in the face, this writer thought the record before us in that case amply justified a realistic and practical finding that the appeal was affirmatively, knowingly, intelligently, and consciously waived. However, the court reporter in *Martin, supra,* had subsequently gone to

work for an agency of the federal government and had either lost some of the tapes or could not transcribe them. A complete statement of facts could not be obtained in *Martin* although assiduous, numerous efforts were made by this writer and the Clerk of Court. However, we did obtain in the *Martin* case about 15 volumes of statement of facts. But that simply would not suffice. Therefore, since we have faced this problem and these issues previously, we order a new trial in the instant matter.

We note from the record that the Appellant is now on parole.

As shown above, this writer tried diligently to obtain a complete statement of facts in *Martin*, by repeated efforts or by plowing or "replowing" that ground. But plowmen, I maintain, have some virtues as expressed by the poet Robert Burns—

## THE PLOUGHMAN

### Chorus

Then up wi't a', my ploughman lad,
And hey, my merry ploughman!
Of a' the trades that I do ken,
Commend me to the ploughman!

### I

The ploughman, he's a bonie lad,
His mind is ever true, jo!
His garters knit below his knee,
His bonnet it is blue, jo.

Robert Burns, *The Complete Poems of Robert Burns*, Volume IV, (Houghton Mifflin Company, The Riverside Press Cambridge, 1926) 4: 145.

It is interesting, accurate, and significant to note that this writer did not desire nor require that this opinion be published; the other Justice in his concurrence required the publication hereof.

The judgment below is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.

WALKER, Chief Justice, concurring.

I concur in the result reached, but refrain from written discourse since *Martin v. State*, 744 S.W.2d 658 (Tex.App.—Beaumont 1988, *no pet.*) preceded my presence on this Court.

BURGESS, Justice, concurring.

I concur in the result. Having authored the majority opinion in *Martin v. State*, 744 S.W.2d 658 (Tex.App.—Beaumont 1988, no pet.), I certainly do not adopt the majority writer's comments or analysis concerning that case and frankly see no relevance in "replowing" that ground.